IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:20-CV-00056-KDB-DSC

| KELLY KUNDMUELLER, | |
|---|---|
| Plaintiff, | |
| v. | **ORDER** |
| PENTAGON FEDERAL CREDIT UNION, | |
| Defendant. | |

**THIS MATTER** is before the Court on the Parties' cross-motions for summary judgment (Doc. Nos. 24, 27).[1] In this action, Plaintiff Kelly Kundmueller contends that Defendant Pentagon Federal Credit Union ("PenFed") violated the Fair Credit Reporting Act ("FCRA") by reporting (consistent with its practice of only reporting as late those payments made outside the month a payment is due) that Plaintiff's February 2019 mortgage payment was "30 days" late when it was paid on March 1, 2019 – actually 28 days late. The Court has carefully considered these motions and the parties' briefs and exhibits in support and in opposition. For the reasons discussed below, the Court will **GRANT** Defendant's motion, **DENY** Plaintiff's motion and enter summary judgment in favor of Defendant.

---

[1] In violation of the Court's Local Rules, Plaintiff failed to file a separate motion for summary judgment (only filing a memorandum in support). *See* Local Rule 7.1. Also, Plaintiff's brief fails to include a brief statement of the facts as required by the Case Management Order. Doc. No. 15 at 2. Nevertheless, the Court has fully considered all of Plaintiff's contentions and arguments.

1

# I. LEGAL STANDARD

"When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar,* 316 F.3d 516, 523 (4th Cir. 2003) (citation omitted). Summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568 (4th Cir. 2015) (internal citations and quotations omitted). "It is axiomatic that in deciding a motion for summary judgment, a district court is required to view the evidence in the light most favorable to the nonmovant" and to "draw all reasonable inferences in his favor." *Harris v. Pittman*, 927 F.3d 266, 272 (4th Cir. 2019) (citing *Jacobs*, 780 F.3d at 568); *see Smith v. Collins*, 964 F.3d 266, 274 (4th Cir. 2020). "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs*, 780 F.3d at 568-69 (quoting 10A Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 2728 (3d ed.1998)). "The court therefore cannot weigh the evidence or make credibility determinations." *Id*. at 569.

However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (internal citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Also, the mere argued existence of a factual dispute does not defeat an otherwise properly supported

motion. *Id*. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Id*. at 249-50.

In the end, the question posed by a summary judgment motion is whether the evidence as applied to the governing legal rules "is so one-sided that one party must prevail as a matter of law." *Id*. at 252.

## II. RELEVANT FACTS

On April 12, 2018, Plaintiff borrowed $275,000 from PenFed through a 30 year mortgage loan with an interest rate of 4.25%. The monthly payments on the mortgage were due on the first day of each month and Plaintiff had her husband, Stephen Court, make her mortgage payments to PenFed. Mr. Court is a licensed attorney who practices bankruptcy law and testified that he is "very well-versed with . . . the Fair Credit Reporting Act." From professional experience, Mr. Court was aware that financial institutions typically report a mortgage payment due on the first day of the month as late based on whether it is made within the month it is due rather than based on actual 30-day cycles. Thus, Mr. Court testified that he knew that a payment would not be reported late even if paid 30 or more days late in a month with 31 days and also that financial institutions typically report a payment that is due on February 1 but made on March 1 as late even though it is less than 30 days late because February has fewer than 30 days. In December 2018, Mr. Court called PenFed to confirm that its credit reporting practices are consistent with his experience, and he was told that a late payment "will not be reported as long as it's paid by the end of the month."

With this reporting policy in mind, Plaintiff chose to default on the PenFed loan when her first payment became due on June 1, 2018, and she continued to pay late each month thereafter. Mr. Court testified, "there were plenty of times I could have—we could have made the payment

3

Case 5:20-cv-00056-KDB-DSC   Document 38   Filed 10/14/21   Page 3 of 10

well before the end of the month" but did not do so because he "[knew] how this reporting stuff works." In September 2018 and November 2018, Plaintiff did not make her payment until the last few days of the month, when it was 28 or 29 days late. Then, in December 2018, she made her mortgage payment 30 days after it was due, *i.e.*, on December 31, 2018. PenFed did not report Plaintiff's December 31, 2018 payment as late to any credit reporting agencies, even though it was 30 days late.

The claims in this case arise from Plaintiff's failure to make the payment that was due on February 1, 2019 until March 1, 2019. Mr. Court testified that he "probably" tried to make the February 1, 2019 payment on February 28, 2019, but he admitted PenFed did not receive the payment until March 1, 2019, because "it may have been made after 8:00 p.m." During his deposition, Mr. Court admitted he was at fault for not making the February 1, 2019 payment before March 1, 2019: "I may have screwed that up, you know …. " Mr. Court also admitted he knew (and was apparently pleased) PenFed was likely to report the payment he made on March 1, 2019, as late based on his prior experience: "So I was like, 'Oh, shit. I hope they're going to report it as late to the credit bureaus now.' Like because I've seen it happen in the past with my clients, my own clients, and sure enough, they did."

In March of 2019, PenFed reported information to TransUnion through software provided by a third-party vendor, Fiserv, Inc. ("Fiserv"). Fiserv's software generated automated reports using the payment dates entered into PenFed's computer systems, which Fiserv then transmitted to TransUnion on or about the 10th day of each month. The reports Fiserv's software generated for each account included the date of the "Last Payment" made on the account. Credit reports and internal business records TransUnion produced during discovery confirm that TransUnion received information from the Fiserv reports about the last payment date for Plaintiff's account.

When Mr. Court notified TransUnion that he disputed the reporting of the February 2019 payment, he provided copies of the account records showing that the payment was made on March 1, 2019. When PenFed learned that Plaintiff raised a dispute with TransUnion, it reviewed its records and confirmed that the date of the payment, March 1, 2019, was recorded accurately. TransUnion informed Plaintiff of the results of its investigation on June 5, 2019. However, TransUnion continued to report the payment as 30 days late. Ultimately, on November 6, 2019, PenFed changed its credit reporting to indicate that Plaintiff's February 1, 2019 payment was not late.

Prior to the change in reporting with respect to the February 2019 payment, Plaintiff had additional problems with late mortgage payments. She attempted to make her May 1, 2019 payment on May 14, 2019, but that payment was reversed because the account from which it was made did not have sufficient funds. Plaintiff also made two separate payments on June 14 and 22, 2019. Since the attempted payment on May 14, 2019, was reversed, and Plaintiff did not make another payment until June 14, 2019, her payment for May of 2019 was more than 30 days late. Several payments Plaintiff attempted to make in August through October of 2019 were also reversed. As a result, Plaintiff's payments for August, September, and October of 2019 were each more than 30 days late.

Plaintiff contends that she has been harmed in several ways by PenFed's reporting of her February 2019 mortgage payment as 30 days late, including a reduction in her credit score and the inability to refinance her mortgage in August of 2019. Also, Plaintiff claims she was unable to secure financing for a vacant lot she wanted to purchase in the Fall of 2019. In response, Defendant contends that Plaintiff was not actually harmed by these financing delays because – almost a year after this action was filed in May 2020 – she refinanced her mortgage in March 2021 on more

5

favorable terms and at the same time was able to use cash to purchase the vacant lot she had planned to buy in 2019 at the same purchase price without incurring any financing costs.

### III. DISCUSSION

PenFed seeks summary judgment on two alternate grounds. First, it argues the Court does not have subject matter jurisdiction because Ms. Kundmueller cannot prove she suffered a "concrete" injury in fact and therefore lacks standing to sue. *See TransUnion, LLC v. Ramirez*, 141 S. Ct. 2190 (2021). More specifically, Defendant asserts that Plaintiff did not suffer tangible harm because she allegedly benefitted from waiting until 2021 to refinance her mortgage and purchase the vacant lot, and she lacks sufficient evidence to prove she suffered a legally-cognizable intangible harm. *See id*; *Doe v. Chao*, 306 F.3d 170, 179-82 (4th Cir. 2002). Second, PenFed claims that it did not violate the FCRA because the report was not "patently incorrect or misleading in such a way and to such an extent that it can be expected to have an adverse effect." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001) (internal quotations omitted). In turn, Plaintiff contends she is entitled to summary judgment because "28 days is not 30 days," which makes PenFed's report to TransUnion inaccurate as a matter of law.

In *Ramirez*, the Supreme Court addressed the complex issue of when, in the context of the FCRA, a plaintiff has suffered alleged harm that is sufficiently "'concrete' – that is, 'real, and not abstract'" to support Article III standing. *Ramirez*, 141 S. Ct. at 2204. Indeed, the majority holding in *Ramirez* was split (in addition to a strong four justice dissent) with a portion of the plaintiff class being found to have standing and the remainder failing to satisfy the Article III requirements. In *Ramirez*, credit reporting agency TransUnion identified thousands of individuals as "potential terrorists" on an internal "name screen alert" based only on the similarity of their names to those on a government list of "terrorists, drug traffickers, or other serious criminals" who threaten

6

America's national security. *Id*. at 2201. All of the class members were told that they were on the list; however, only a portion of those who were misidentified actually had credit reports labeling them as "potential terrorists" sent to potential creditors. *Id*. As noted, on these facts the Supreme reached a split decision, holding that all of the class members whose credit reports had been sent to potential creditors had standing but that the remaining class members did not. *Id*. at 2212-13.

Relying on *Ramirez*, PenFed argues that Plaintiff lacks standing because she has not suffered any "concrete" harm because, essentially, "things have turned out ok," considering the eventual fortuity of events *after* the filing of the lawsuit, and that also the alleged decline in Plaintiff's credit score as the result of the challenged report does not, by itself, constitute sufficient harm to support standing. However, PenFed does not cite to any authority for its expansion of *Ramirez*[2] to broaden the determination of standing to encompass the real world effects of an inaccurate credit report as plaintiff's circumstances and economic conditions change over time after the filing of a FCRA claim. Further, there is at least a split of authority on the question of whether a declining credit score can support standing for a FCRA claim. *Compare Magruder v. Capital One, Nat'l Ass'n*, No. 19-57(RDM), -- F.3d --, 2021 WL 1999544, at *5 (D.C. Cir. May 19, 2021) with *Miller v. Dish Network, L.L.C*., 326 F. Supp. 3d 51, 59–60 (E.D. Va., 2018). Accordingly, based on the Court's ruling below that PenFed is otherwise entitled to summary judgment based on Plaintiff's failure to prove a FCRA violation and the equitable doctrine of

---

[2] In *Ramirez*, the Supreme Court ruled that the class members who were falsely labeled as "potential terrorists" had standing to pursue their FCRA claims based only on the publication of their credit reports to potential creditors, apparently without requiring any additional proof that each of those class members suffered actual financial harm as a result of the inaccurate report. Thus, while it did not directly address the issue presented here, the *Ramirez* holding may suggest that courts should be careful not to confuse and conflate the separate issues of the minimum requirements for Article III standing and proof of actual damages (which may be recovered in addition to statutory damages under the FCRA).

7

Case 5:20-cv-00056-KDB-DSC   Document 38   Filed 10/14/21   Page 7 of 10

estoppel, the Court will assume – without deciding – that Plaintiff has standing to assert her FCRA claim.

Standing is of course only the threshold hurdle for Plaintiff. On the merits, she must present evidence from which a reasonable jury could find in her favor on her FCRA claim. As discussed below, the Court holds that she has failed to do so.

First, Plaintiff has failed to establish that PenFed – in these unique and unusual circumstances – committed a FCRA violation.[3] A technical FCRA violation is not actionable unless the information reported is "patently incorrect or . . . misleading in such a way and to such an extent that it can be expected to have an adverse effect." *Dalton*, 257 F.3d at 415. Having included the correct date of the payment at issue in its report, PenFed's report was not "patently incorrect" so the question becomes whether a reasonable jury could find that the use of a standard code of "30 days late" because the February payment was made in March was actionably "misleading."

No reasonable jury could so find. Even putting aside the slight difference between paying 28 days late and 30 days late, Plaintiff was admittedly actually 30 days late in paying her December 2018 mortgage payment; therefore, it is not misleading, but rather it is indisputably true that Plaintiff was 30 days late on one recent monthly mortgage payment as of March 2019. And, there is no evidence that a creditor would view the distinction between being a full 30 days late in paying the December mortgage payment instead of the February mortgage payment as material. Thus, to

---

[3] To be clear, the Court makes this holding only in so far as PenFed's practice of reporting mortgage payments as "30 days late" based on whether they were paid in the month in which the payment is due applies to Plaintiff in these particular circumstances. The Court makes no ruling as to the lawfulness of the practice as applied to other borrowers in different circumstances (for example, a borrower who was unaware of the practice and/or did not have Plaintiff's payment history).

the extent that the purpose of the FCRA was intended to require that credit reports accurately reflect the substance of financial transactions, Plaintiff's credit report plainly did not *materially* misrepresent her overall mortgage payment history when it identified her paying 30 days late in February but not in December.

Alternatively, Plaintiff's FCRA claim is clearly barred by the equitable doctrine of estoppel. *See* Doc. No. 11 at 8 (PenFed's Fourth Affirmative Defense). "Equitable estoppel precludes a party from asserting rights he otherwise would have had against another when his own conduct renders assertion of those rights contrary to equity." *Am. Bankers Ins. Grp., Inc. v. Long*, 453 F.3d 623, 627 (4th Cir. 2006). The legal principle underlying the theory of equitable estoppel "rests on a simple proposition: it is unfair for a party to rely on a contract when it works to its advantage, and repudiate it when it works to its disadvantage." *Id.*, citing *Wachovia Bank, Nat. Ass'n v. Schmidt*, 445 F.3d 762, 769 (4th Cir. 2006).

On these facts, it would be patently unfair to allow Plaintiff to succeed on a FCRA claim on the basis of PenFed's consistent application of its practice and policy of reporting as "30 days late" only those mortgage payments made outside the month they were due. Plaintiff *knowingly* took advantage of this practice, regularly paying her mortgage late[4] – even a full 30 days late – without any negative report being sent to a credit reporting agency. Having sought and accepted the benefits of paying late under this policy without penalty, Plaintiff is not equitably permitted to now claim that PenFed's practice violates the FCRA when the lone "downside" of the practice (being reported as late on March 1 for a February 1 payment) is applied to her.  Put more

---

[4] The Court does not hold that Plaintiff is estopped from pursuing a FCRA claim simply because she paid her mortgage late (which borrowers may do for many reasons); rather, Plaintiff may not knowingly and deliberately take advantage of PenFed's practices in reporting late mortgage payments in December and then two months later claim that the same practices violate the FCRA.

9

colloquially, Plaintiff cannot "eat her cake, then have it too." Therefore, the Court finds that Plaintiff is equitably estopped as a matter of law from asserting her FCRA claim.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendant's Motion for Summary Judgment (Doc. No. 27) is **GRANTED;**

2. Plaintiff's Motion for Summary Judgment (Doc. No. 24) is **DENIED;**

3. Summary Judgment is entered in favor of Defendant; and

4. The Clerk is directed to close this matter in accordance with this Order.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: October 14, 2021

Kenneth D. Bell
United States District Judge